**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GRADY MEMORIAL HOSPITAL CORPORATION and LAW OFFICES OF RONALD I. KAPLAN, MD, LLC, | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE No.: |
| vs. | ) | |
| SMITH DESIGN STUDIOS, LLC, | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMARY INJUNCTION**

COME NOW the Plaintiffs, GRADY MEMORIAL HOPSITAL CORPORATION ("Grady") and LAW OFFICES OF RONALD I. KAPLAN, MD, LLC ("Kaplan Firm"), and hereby show as follows in support of this Motion:

**STATEMENT OF FACTS**

Plaintiff Grady operates a hospital in Fulton County, Georgia. Plaintiff Kaplan Firm operates a law firm in Fulton County, Georgia.

On December 12 and 13, 2022, in connection with a settlement between Grady and the Kaplan Firm's client, Sharon Hawkins, a person posing as a paralegal in the Kaplan Firm requested by email (the "December 12 and 13 Emails") that Grady wire settlement funds to JP Morgan Chase bank account number xxxxx7975 (the "Chase Account"). (Norris Declaration, Ex. 1.) The Kaplan Firm attests that it did not send

the wire instructions, and it does not own the Chase Account. (Kaplan Declaration, Ex. 2.)

In compliance with the instructions received from Defendant, Grady sent a wire for $100,000 to the Chase Account on or about December 19, 2022 (the "Wire"). (Norris Declaration, Ex. 1.)

Records received from JPMorgan Chase Bank confirm that the Chase Account is owned by Defendant Smith Design Studios, LLC, an Alabama limited liability company whose sole member, Keston Smith, is a citizen of the State of New York. (JPMorgan Chase Records, Ex. 3.)

Plaintiffs are informed by JPMorgan Chase Bank's legal order department that JPMorgan Chase Bank is holding the proceeds of the Wire. (Chase Email, Ex. 4.)

As to the *ex parte* nature of this relief sought, the Declaration of Mark Lefkow is submitted as Exhibit 5 hereto. As set forth in that declaration, in light of the complex nature of the scheme involved, giving prior notice of the TRO to Defendant or its bank may result in the funds going beyond the reach of Court process.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION

1.

Plaintiffs stand to suffer immediate and irreparable injury, loss, and damage if Defendant or its co-conspirators withdraw from the Chase Account or any of the

financial institutions where Defendants may have deposited Plaintiff's funds or deposited proceeds of Plaintiff's funds allow withdrawal of any funds held by and fraudulently obtained by the Defendants. In light of the fraudulent activity which resulted in $100,000 being transferred into the Chase Account, it is likely that Defendant and its co-conspirators will dispose of the funds and bring the funds beyond the reach of the Court if the relief requested herein is not granted.

2.

Plaintiffs have met the prerequisites for issuance of a temporary restraining order and interlocutory/preliminary injunction. *Grossi Consulting, LLC v. Sterling Currency Group, LLC*, 290 Ga. 386, 388, 722 S.E.2d 44, 46 (2012); *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009) ("(1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest."); *Pittman v. State*, 288 Ga. 589, 592, 706 S.E.2d 398, 402 (2011) (upholding an interlocutory injunction where the assets subject to the litigation could be dissipated).

3.

The declarations of DeAngelo Norris and Ronald Kaplan, filed herewith, shows that Plaintiffs' claims for fraud, money had and received, unjust enrichment,

civil RICO, and civil conspiracy have a substantial likelihood of success on the merits under Georgia law. *Kilroy v. Alpharetta Fitness, Inc.*, 295 Ga. App. 274, 275–76, 671 S.E.2d 312, 313–14 (2008) ("The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff."); *McGonigal v. McGonigal*, 294 Ga.App. 427, 429(2), 669 S.E.2d 446 (2008) (elements of money had and received claim are that "a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused" (citations omitted)); *Smith v. McClung*, 215 Ga.App. 786, 789(3), 452 S.E.2d 229 (1994) ("[T]he theory of unjust enrichment applies when as a matter of fact there is no legal contract ..., but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." (Citations omitted.)); *McIntee v. Deramus*, 313 Ga. App. 653, 656, 722 S.E.2d 377, 379 (2012) ("To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort...." (Citations and quotations omitted.))

4.

Plaintiffs stand to suffer immediate and irreparable injury absent an injunction. The funds that are the subject of the fraudulent transaction must be returned to the parties who own and who are owed the funds. Absent an immediate injunction, the nature of the fraudulent actions set forth above show that the person or persons who perpetrated the fraud acted in coordination with each other to intercept and abscond with the funds. This suggests that, if an injunction is not entered, these actors will complete their plan to abscond with the funds.

5.

The potential injury to the accountholder of the Chase Account is minimal or non-existent, as the account holder has no connection to the subject transaction and, therefore, no right to hold the sums transmitted in the Wire Transfer. As to the scope of the injunction, Plaintiffs submit that all in funds the Chase Account should be frozen, in that accounts which are the tools of such frauds often hold proceeds of a series of fraudulent activities. Issuing an injunction to freeze the whole account will allow any other parties who have claims to these funds to receive notice and assert their claims in this forum. Alternatively, the Court should direct that the Chase Account and all accounts owned by the owners of the Chase Account be frozen up to the amount of $100,000, the amount of the Wire Transfer.

6.

An asset freeze on all proceeds and funds derived JPMorgan Chase bank account number xxxxx7975 after December 19, 2022, is proper, in that Defendant and its co-conspirators are running a criminal enterprise which stole $100,000 by fraudulently intercepting emails between parties to a transaction and diverting wired funds to a bank account having, upon information and belief, no connection to the attorney-client relationship. 18 U.S.C. § 1964(a) allows for equitable relief for RICO violations, providing that:

> (a)The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

7.

Additionally, a remedy under Georgia law for unjust enrichment is imposition of a constructive trust. *St. Paul Mercury Ins. Co. v. Meeks*, 508 S.E.2d 646, 648 (Ga. 1998).

8.

Valid claims for constructive trust and equitable remedies under RICO allow the Court to "freeze a defendant's assets to ensure the adequacy of a disgorgement remedy." *Commodity Futures Trading Comm. v. Levy*, 541 F.3d 1102, 1114 (2008); *Absolute Activist Value Master Fund Ltd. v. Devine*, 2016 WL 1572388, at *11 (M.D. Fla. Apr. 19, 2016) (approving asset freeze up to the amount stolen pursuant to a scheme).

9.

An injunction is proper against Defendant and its co-conspirators, and all persons in active concert or participation with the foregoing, who fraudulently obtained funds from Grady purporting to be acting on behalf of Plaintiff Kaplan Firm. To the contrary, it serves the public interest for the Court to allow recovery of fraudulently stolen funds.

10.

An injunction, including but not limited to a freeze on the Chase Account and all of its proceeds, wherever located, since November 15, 2023, up to the amount of $100,000, is warranted and should be issued on a temporary and preliminary, then permanent, basis pursuant to O.C.G.A. §§ 9-5-1, 9-11-65 and 11-4A-503, and Fed.R.Civ.P. Rule 65. The injunction should restrain Defendant, all persons acting in concert with or in participation with Defendant, its officers, directors, agents,

representatives, successors, assigns, any banks, savings and loan associations, credit card companies, credit card processing agencies, merchant acquiring banks, financial institutions, or other companies that engage in the processing or transferring of money and/or real or personal property, who receive actual notice of the Court's Order by personal service or otherwise from, without prior approval of the Court, transferring, disposing of, or secreting any money or proceeds of money from Defendant and any other assets of Defendant from accounts associated with or utilized by any of the Defendant, or otherwise paying or transferring any money, stocks, bonds, real or personal property, or other assets to any of the Defendant, into or out of any accounts associated with or utilized by any of the Defendant, regardless of whether such accounts are located in the United States or abroad, including but not limited to the Chase Account. See *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir.1995) (concluding that the "district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits" in a Lanham Act case); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 Fed.Appx. 707, 709 (5th Cir.2007) (per curiam) (ruling that the district court was "authorized to preserve the status quo by entering a limited asset freeze" in a Lanham Act infringement case); *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir.2013), *cert. denied*, 134 S.Ct. 2819 (2014) (preliminary asset freeze injunction "forbids others – who are not directly enjoined but who act 'in active

concert or participation' with an enjoined party – from assisting in [its] violation," citing Fed.R.Civ.P. 65(d)); *Waffenschmidt v. MacKay*, 763 F.2d 711, 718–19 (5th Cir.1985) (holding that a domestic nonparty's knowing, intentional violation of an injunction is sufficient on its own to create specific personal jurisdiction to enforce the injunction against that party); *ClearOne Commc'ns, Inc., v. Bowers*, 651 F.3d 1200, 1215–16 (10th Cir.2011) (affirming that "a district court may properly exercise personal jurisdiction over a nonparty for purposes of entering contempt orders, when the nonparty, with actual notice of an injunctive order issued by the district court, and in active concert or participation with a party, violates that order").

11.

In light of the complexity and the fraudulent nature of the scheme, notice to the accountholders in advance of granting an injunction would likely prompt them to further dispose of the stolen funds. (Counsel Decl., Ex. 5.) Therefore, Plaintiffs seek this relief *ex parte.*

12.

In light of the fact that JPMorgan Chase has held the funds for almost a year and the accountholder has not taken action to recover the funds for itself, in light of the fact that it is unlikely that the accountholder could make a claim to an interest in settlement proceeds intended to be paid from Grady Hospital to the Kaplan Firm, Plaintiffs respectfully request that a bond be set at $1,000, which is 1/100th of the

amount wired under false pretenses. In the unlikely event that the accountholder contests the relief sought in this case, it will have an opportunity to request that the Court to set a higher bond.

## CONCLUSION

WHEREFORE, Plaintiffs pray that this Court grant this Motion for a Temporary Restraining Order, enter a Temporary Restraining Order on the terms set forth in the proposed Order submitted herewith, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted, this, the 11th day of December, 2023.

COPELAND, STAIR, VALZ & LOVELL, LLP

By: */s/Mark D. Lefkow*
MARK D. LEFKOW
Georgia Bar No. 004289

***Attorneys for Plaintiff Law Offices of Ronald I. Kaplan, MD, LLC***

191 Peachtree Street, N.E.
Suite 3600
Atlanta, Georgia 30303
Phone: (404) 522-8220
Fax: (404) 523-2345
Email: mlefkow@csvl.law

WEATHINGTON

By: */s/Jesse K. Broocker*
JESSE K. BROOCKER
Georgia Bar No. 211070
CHARLES N. HAACK
Georgia Bar No. 149589
***Attorneys for Plaintiff Grady Memorial Hospital Corporation***

191 Peachtree Street, N.E.
Suite 3900
Atlanta, Georgia 30303
Phone: (404) 524-1600
Email: jbroocker@weathington.com
chaack@weathington.com

* Local Rule 5.1(C) Certification: This document was prepared using Times New Roman 14-point font, one of the fonts allowed by N.D. Ga. L.R. 5.1(C).